**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No: 09-cv-02512-DME-BNB

FREDERICK J. CARBERRY,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, also known as METLIFE

    Defendant.

**MEMORANDUM ORDER GRANTING SUMMARY JUDGMENT**

In this ERISA[1] action, brought pursuant to 29 U.S.C. § 1132(a), Plaintiff Frederick Carberry challenges the decision of Defendant Metropolitan Life Insurance Co. ("MetLIfe") to deny him long-term disability benefits. This matter comes before the Court on cross-motions for summary judgment. (Docs. 44, 45.) For the following reasons, the Court GRANTS MetLife summary judgment.[2]

---

[1] Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA").

[2] In his summary judgment motion (Doc. 45), Carberry argued that MetLife's benefits denial must be overturned. The Court DENIES that motion and, instead, upholds MetLife's denial of benefits and grants MetLife summary judgment. Even though MetLife did not assert its own motion for summary judgment on that basis, this Court has authority to grant MetLife summary judgment based on the benefits issue. See generally 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2720 (3d ed. 1998) (noting court's general authority to enter summary judgment for non-moving party). Furthermore, MetLife, in its response to Carberry's summary judgment motion, did ask the Court to enter judgment in its favor based upon the merits of MetLife's benefits denial.

    MetLife filed its own motion for summary judgment (Doc. 44), but argued only that Carberry released his claim for LTD benefits at the time IBM terminated his

## I. Background

Carberry injured his back in 1991, while serving in the Army. After he was honorably discharged in April 1992, Carberry served five years in the Army Reserves, earned an electrical engineering degree, and then worked for over seven years for International Business Machines Corporation ("IBM"). Carberry asserts that he can no longer perform his sedentary duties as a staff engineer for IBM due to back pain stemming from his 1991 injury, and depression secondary to his back pain. Carberry last worked for IBM on July 27, 2007.

IBM provided its employees, including Carberry, long-term disability ("LTD") benefits under its "Long-Term Disability Plan" ("the Plan"). The parties agree that ERISA governs that Plan. MetLife both administered the Plan and insured the LTD benefits offered under the Plan. MetLife denied Carberry's application for LTD benefits, after concluding that the medical records he submitted did not document an impairment that would keep Carberry from performing his duties as a staff engineer. Carberry challenges that determination here.[3]

## II. Standard of review

### A. Standard applicable to summary judgment motions

Both Carberry and MetLife have moved for summary judgment under Fed. R Civ. P. 56. In resolving cross-motions for summary judgment in an ERISA action, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility

---

employment. The Court does not need to address the release here and so DENIES that motion as moot.

[3] Although Carberry initially sued both MetLife and IBM, he later moved to dismiss IBM without prejudice. The Court previously granted that motion.

for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 796 (10th Cir. 2010) (quotation omitted); see also Murphy v. Deloitte & Touche Group Ins. Plan, 619 F.3d 1151, 1160 (10th Cir. 2010) (noting generally that review of ERISA claim challenging the denial of benefits "is confined to the administrative record") (quotation omitted).

**B. Standard for reviewing MetLife's benefits denial**

**1. Generally**

A federal court will review an administrator's denial of benefits de novo, unless the plan itself provides otherwise. See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). Here, the parties do not dispute that the Plan gives MetLife discretion to interpret the terms of the Plan and to decide eligibility for LTD benefits.[4] Therefore, this Court would ordinarily review MetLife's benefits decision under an arbitrary-and-capricious standard. See id. But Carberry asserts this Court should instead review MetLife's benefits decision de novo, for two different reasons.

---

[4] The Plan specifically provides the following:

> In carrying out their respective responsibilities under the LTD Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the LTD Plan and to determine eligibility for and entitlement to LTD Plan benefits in accordance with the terms of the LTD Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(R. at 75.)

### a. Colorado Revised Statute § 10-3-1116(2)

Carberry first argues that Colorado law precludes a plan "issued in" Colorado from giving its administrator discretion to decide a plan participant's eligibility for benefits. Carberry specifically relies upon Colo. Rev. Stat. § 10-3-1116(2), which states that

> [a]n insurance policy, insurance contract, or plan that is issued in this state that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, contract, or plan or to determine eligibility for benefits.[5]

This statute does not apply here, for two reasons.

First, there is nothing in the administrative record to suggest that this case involves a policy or plan "issued in" Colorado. Generally, "issued" means the preparation and signing of the policy, the delivery and acceptance of the policy, or the preparation, execution and delivery of the policy. See 1A Couch on Insurance § 14.1 (3d ed. 2011). Carberry's argument in support of applying § 10-3-1116(2) appears to focus on the group disability policy MetLife issued to IBM to fund the Plan. But that policy is not in the administrative record and, for that reason, it is not clear that it grants MetLife discretion contrary to Colo. Rev. Stat. § 10-3-1116(2). Even if it did, there is nothing in the record to suggest that MetLife issued – i.e., prepared, executed or delivered - that policy to IBM in Colorado. Nor does Carberry offer any authority to support his assertion that MetLife "issued" IBM the group disability policy in Colorado solely because IBM transacts business in Colorado.

---

[5] Carberry does not rely upon Colo. Rev. Stat. § 10-3-1116(3), which similarly provides, in pertinent part, that "[a]n insurance policy . . . or plan that is issued in this state shall provide" that a person whose claim for disability benefits has been denied "shall be entitled to have his or her claim reviewed de novo."

Although Carberry does not focus on the fact, IBM arguably issued the Plan to its employees. The Plan is in the record and does give MetLife discretion to make claims determinations. But assuming IBM issued the Plan to Carberry as its employee, that occurred in Arizona, where Carberry worked for IBM. Carberry moved to Colorado only after IBM terminated his employment.

Second, even if this case involved a policy or plan "issued in" Colorado, Colo. Rev. Stat. § 10-3-1116(2) took effect August 5, 2008, while the record indicates that the Plan took effect earlier. (It is not clear when the group policy MetLife issued to IBM took effect because that policy is not in the administrative record.) There is nothing to suggest that the Colorado legislature intended that § 10-3-1116(2) apply retroactively to plans that took effect before the statute did. Cf. McClenahan v. Metro. Life Ins. Co., 416 F. App'x 693, 695-96 (10th Cir. 2011) (unpublished)[6] (holding Colo. Rev. Stat § 10-3-1116(3) did not apply retroactively in that case, where the plan was issued and benefits were denied before the Colorado statute's effective date, because there was no indication that the state legislature intended the statute to apply to prior conduct). For these reasons, then, Colo. Rev. Stat. § 10-3-1116(2) does not apply to this case.

### b. Procedural irregularities

Carberry next argues that MetLife has forfeited any deferential review of its benefits decision due to procedural irregularities that occurred during MetLife's consideration of Carberry's application for LTD benefits. There are circumstances where, in light of procedural irregularities, courts have applied de novo review,

---

[6] While McClenahan, as an unpublished decision, is not binding precedent, the Court finds its reasoning persuasive. See 10th Cir. R. 32.1(A); see also Fed. R. App. P. 32.1(a).

5

notwithstanding the fact that a plan afforded the administrator discretion to make benefits decisions. But those cases involve circumstances where the administrator never issued a benefits ruling at all, failed to issue a ruling in a timely manner, or violated relevant ERISA regulations in reaching a benefits decision. See LaAsmar, 605 F.3d at 796-99 (discussing cases); Hancock v. Metro. Life Ins. Co., 590 F.3d 1141, 1152-53 (10th Cir. 2009). Carberry does not make such arguments here.[7] Instead, he asserts six procedural irregularities that go more to the merits of the claim denial. Carberry provides no authority indicating that the specific procedural complaints he asserts here, addressed in greater detail below, require de novo review.

**2. Impact of MetLife's inherent conflict of interest on this Court's review**

For the foregoing reasons, the Court rejects Carberry's arguments that this Court's review of MetLife's benefits decision should be de novo. Instead, this Court reviews MetLife's benefits denial for an abuse of discretion, "asking only whether the denial of benefits was arbitrary and capricious." LaAsmar, 605 F.3d at 796 (quotation omitted). Under that standard, the Court "will uphold an administrator's decision so long as it is predicated on a reasoned basis." Graham v. Hartford Life & Accident Ins. Co., 589 F.3d 1345, 1357 (10th Cir. 2009) (quotation omitted), cert. denied, 130 S. Ct. 3356 (2010).

Nonetheless, in this case, MetLife both administers the Plan and insures claims made under it. Such a role creates a conflict that this Court must also consider in deciding whether MetLife abused its discretion in denying Carberry benefits. See

---

[7] Carberry initially argued that this Court's review should be de novo because MetLife took too long to decide his administrative appeal. But Carberry has now abandoned that argument.

Glenn, 554 U.S. at 108, 115-17. "[A] conflict of interest affects the outcome at the margin, when [the Court] waver[s] between affirmance and reversal. A conflict is more important when 'circumstances suggest a higher likelihood that it affected the benefits decision,' but less so when the conflicted party 'has taken steps to reduce potential bias and to promote accuracy.'" Hancock, 590 F.3d at 1155 (quoting Glenn, 554 U.S. at 117).

The significance of the conflict depends "upon the circumstances of a particular case." Glenn, 554 U.S. at 108. Here, Carberry asserts that six procedural irregularities in MetLife's consideration of his benefits application require this Court to "dial-back" the discretion afforded to MetLife's decision "to near zero." (Doc. 45 ¶ 32.) These purported irregularities, however, do not warrant such a drastic reduction in the discretion to be afforded MetLife's benefits determination.

Three of Carberry's claimed procedural irregularities deal with MetLife's use of two independent physician consultants ("IPCs"), a specialist in physical medicine and a psychiatrist, to review Carberry's medical records. Generally a conflicted administrator lessens its bias by using such independent consultants. See Holcomb v. Unum Life Ins. Co. of Am., 578 F.3d 1187, 1193 (10th Cir. 2009); Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1015 (10th Cir. 2004) (per curiam), abrogation on other grounds recognized in Holcomb, 578 F.3d at 1192-93. Nonetheless, here Carberry contends that MetLife concealed the identity of these IPCs, "deliberately sandbagging their opinions." (Doc. 45 ¶ 28.) Carberry further asserts that these two IPCs were "tainted," "have unknown qualifications, cherry-picked certain medical records, misstated facts, and engaged in other chicanery." (Id. ¶ 25.)

7

The administrative record indicates that MetLife provided the IPCs with all the documentation Carberry submitted. Cf. Glenn, 130 S. Ct. at 118 (suggesting that an administrator's failure to provide independent medical expert with all of the claimant's records might be a reason to overturn the administrator's discretionary benefits denial). Based on their review of those records, the IPCs prepared an initial report and several supplemental reports, each opining that Carberry's impairments did not preclude him from performing his regular duties as an IBM staff engineer.  MetLife provided the IPCs' initial reports, which identified the name and credentials of each IPC, to Carberry's treating physicians, Drs. Pinky Kotwal and Christopher Ryan, and gave the treating physicians an opportunity to respond.  MetLife specifically asked the treating physicians, in their responses, to address the impairments that they thought were preventing Carberry from working.  MetLife also notified Carberry's attorney that it had asked the two IPCs to review Carberry's records and had then sent the IPCs' reports to Carberry's treating physicians.  This notice further informed Carberry's attorney of the deadline for the treating physicians to submit their comments to MetLife, and asked the attorney to contact the treating physicians to insure that they had received the IPCs' reports and knew about the deadline for responding to those reports.  Yet neither of Carberry's treating physicians responded.

In light of this procedure, it can hardly be said that MetLife "sandbagged" the IPCs' opinions. See generally Metzger v. UNUM Life Ins. Co. of Am., 476 F.3d 1161, 1165-68 (10th Cir. 2007) (noting that, under ERISA regulations, a claimant is generally not entitled to rebut medical opinion reports generated during the course of an administrative appeal).  Nor can it be said that MetLife hid the identities of the IPCs.

And to the extent the IPCs "cherry-picked" from the medical records or misstated facts, the treating physicians had an opportunity to point that out, but did not.

Carberry further contends that the two IPCs never reviewed the opinion of his treating physician, Dr. Ryan, that Carberry was disabled. But the administrative record indicates that MetLife's two IPCs reviewed Dr. Ryan's written opinion. While it is true that the IPCs, in their reports, did not specifically refute the details of Dr. Ryan's opinion, there is no indication that the IPCs did not adequately consider it. Nor was MetLife required to give any special deference to a treating physician's opinion. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825, 831 (2003).

Apart from MetLife's use of the two IPCs, Carberry also complains that MetLife refused to consider the decision of the Social Security Administration ("SSA") awarding him disability benefits, after concluding that Carberry was unable to perform any substantial gainful employment. The SSA, however, issued its decision four months after MetLife concluded the administrative appeal and finally denied Carberry's LTD benefits application. Carberry has failed to show either that MetLife was required under the Plan to reopen his benefits application, or that MetLife had to defer to the SSA's disability determination.

As another procedural irregularity, Carberry argues that MetLife read new terms into the Plan's language. But, as explained below, the record does not support that contention.

Finally, Carberry asserts that MetLife should have conducted a "face-to-face" examination of him before denying benefits. (Doc. 45 ¶ 29.) While MetLife could have asked Carberry to submit to such an examination, he has not shown that there was any

9

requirement that MetLife do so. Under the Plan, it remained Carberry's obligation to submit proof, satisfactory to MetLife, establishing that he was entitled to benefits.

For these reasons, then, while the Court, in applying the arbitrary-and-capricious standard of review, will take into account MetLife's inherent conflict, as both the claims administrator and plan insurer, the Court declines to "dial-back" MetLife's discretion "to near zero."[8]

### III. MetLife's decision to deny Carberry LTD benefits was neither arbitrary nor capricious

The Plan, as relevant here, defined "disabled" to mean that, as of January 2008, Carberry could not "perform the important duties of [his] regular job with IBM because of sickness or injury." (R. at 66-67.) Carberry claimed that he could not perform his sedentary duties as an IBM staff engineer because of chronic thoracic back pain, neck pain and stiffness, left leg pain, depression, migraine headaches, cognitive problems, and an inability to sit for extended periods of time. MetLife denied Carberry's claim, however, after concluding the medical records Carberry provided did not establish that he was unable to perform his duties as a staff engineer. That determination was neither arbitrary nor capricious.

Although no one disputes that Carberry injured his back in 1991, there is no evidence in the record documenting the exact nature or extent of that injury. And, notwithstanding that injury, Carberry was able to serve five years in the military reserve, obtain an electrical engineering degree, and work for IBM for seven years.

---

[8] Even if the Court instead reviewed MetLife's decision under a de novo standard, the Court would affirm MetLife's denial of benefits and grant summary judgment to MetLife.

Carberry's medical records document periodic complaints of back pain, increasing in 2007. There is, however, no indication in the record of anything that might have occurred at that time to exacerbate Carberry's condition. In March of 2007, Carberry underwent x-rays and MRIs of his spine. Those tests revealed only mild degeneration, similar to the results from a 2002 MRI. Carberry's own treating physicians, as well as MetLife's IPC, indicated that these results were generally normal or "unremarkable." Further, the records do not suggest Carberry's headaches preclude his ability to work as a staff engineer. Finally, Carberry's treating physicians, as well as MetLife's IPC, indicated that his psychological difficulties, including his depression, were secondary to his back pain and did not, by themselves, preclude him from working.

Carberry points to the opinion of his treating physician, Dr. Ryan, that muscle spasms in Carberry's back limited his ability to function so severely that he could not perform his engineering job at IBM. MetLife was not required to afford Dr. Ryan's opinion special weight, and did not act in an arbitrary and capricious manner in declining to do so. Black & Decker Disability Plan, 538 U.S. at 825, 831. This is especially true here because Dr. Ryan's relationship with Carberry was, at the time, of very short duration.[9] See id. at 832.

MetLife did not deny Carberry LTD benefits because it concluded he suffers no pain. Instead, MetLife denied Carberry LTD benefits because there was no objective evidence in the record that the pain he suffered precluded him from performing his

---

[9] MetLife does not challenge the designation of Dr. Ryan as one of Carberry's treating physicians, even though at the time Dr. Ryan offered his opinion, he had only seen Carberry once and that was for an evaluation of his functional impairments.

11

sedentary work as a staff engineer for IBM. In light of the medical evidence in the administrative record, that determination was neither arbitrary nor capricious.

## V.  Conclusion

For these reasons, MetLife's decision to deny Carberry LTD benefits was not arbitrary and capricious, even taking into account MetLife's conflict of interest. See Hancock, 590 F.3d at 1143. Therefore, the Court GRANTS summary judgment for MetLife. Because this decision resolves all issues remaining in this case, the Court directs the clerk to enter judgment for MetLife.

DONE AND SIGNED this 19th day of July, 2011.

BY THE COURT:

*s/ David M. Ebel*

_____
U. S. Circuit Court Judge